Randy Miller Executive Director, Department of Revenue Tallahassee
QUESTIONS:
1. Does the Florida Revenue Act of 1949, ch. 212, F. S., and specifically s. 212.031, apply to leases of real property between a health facility authority, created under ch. 154, F. S., and a nonprofit hospital institution receiving the funds from the authority's bonds?
2. Does ch. 212, F. S., specifically s. 212.031, also apply to leases of real property between a health facility authority created under ch. 1548 F. S., and a nonprofit nursing home facility receiving the funds from the authority's bonds?
SUMMARY:
For the purposes and within the general purview of ch. 212, F. S., a health facility authority created pursuant to the Health Facility Authorities Law (part III, ch. 154, F. S.), is a `person' operating a business which engages in a taxable privilege under s.212.031(1) when it rents real property in the state. However, s. 154.233 exempts the authority from liability for sales tax on such rentals under ch. 212; this exemption applies even when the other party to the transaction is not expressly exempted from taxation by law.
In my opinion, s. 212.031, F. S., applies to the transactions described in both questions; however, the transactions described in both questions are exempted from taxation by s. 154.233, F. S.
The Health Facilities Authorities Law, codified as part III of ch. 154, F. S., was enacted by the 1974 Legislature as ch. 74-323, Laws of Florida, and authorizes municipalities and counties of the state to create public bodies corporate and politic to be known as health facilities authorities. Each of such authorities is constituted as a public instrumentality and performs an essential public function. Section 154.207(1). The authorities are authorized to issue revenue bonds to acquire, finance, and refinance health facilities or projects as defined in the law, including existing health facility projects. Sections 154.209 and154.219. Section 154.213 allows health facilities, which are defined to mean nonprofit corporations authorized by law to provide hospital or nursing home care services (s. 154.205(8)), to lease their facilities from the authority in a rental amount sufficient to amortize the bonds. See also s. 154.205(10), defining `project' to include hospitals and nursing homes. Your letter also indicates that, apparently as a means of providing financial assistance for existing nonprofit health facilities, an authority may lease from that entity its facilities as security for payments of the bond proceeds, with the health facility subleasing back the premises, paying rent in an amount sufficient to amortize the bonds as required by s. 154.213. See also ss.154.209 and 154.219.
Your questions are whether the rentals received by the health facility authorities from leasing or subleasing their facilities or `project(s)' to nonprofit hospitals or nursing homes are subject to tax under ch. 212, F. S. Section 212.031(1)(a) reads:
 It is declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing, or letting any real property . . . .
There are three specific exceptions listed thereafter, which are not relevant. The term `person' is defined in s. 212.02(1) to include `any political subdivision, municipality, state agency, bureau or department' as well as associations, corporations, `or other group or combination acting as a unit.' This definition of `person' clearly embraces the county and municipal health facilities authorities. The term `business' is defined in s.212.02(9) to mean:
 . . . any activity engaged in by any person, or caused to be engaged in by him, with the object of private or public gain, benefit, or advantage, either direct or indirect. . . . [Business] shall include . . . all rentals of real property . . . . Any tax on such sales, charges, rentals, admissions, or other transactions made subject to the tax imposed by this chapter shall be collected by the state, county, municipality, and political subdivision, agency, bureau, or department, or other state or local governmental instrumentablity in the same manner as other dealers, unless specifically exempted by this chapter. (Emphasis supplied.)
The rental activities of the authority constitute a `business' as defined above. A contrary result, as found in the cases of Stateex rel. Housing Authority of Plant City v. Kirk, 231 So.2d 522
(Fla. 1970), and Green v. Panama City Housing Authority,115 So.2d 560 (Fla. 1959), approving 110 So.2d 490 (1 D.C.A. Fla., 1959), has been superseded by the subsequent amendment of s. 212.02(9), F. S., into the form quoted above and the addition of the provisions now found in s. 212.08(12), F. S. See AGO 075-267. Thus, all rentals from public bodies, except public housing authorities under ch. 421, F. S., are now businesses subject to ch. 212, F. S. The statutes above indicate the general applicability of the `rentals tax' imposed by s. 212.031(1)(c) to the health facility authorities.
Your letter also makes note of s. 154.233, F. S. It reads, in relevant part:
 . . . because the operation and maintenance of a project by a health facility will constitute the performance of an essential public function, neither the authority nor a hospital institution shall be required to pay and taxes or assessments upon or in respect of a project or any property acquired by the authority under the provisions of this part or upon the income therefrom . . . . (Emphasis supplied.)
The wording of this exemption could by its plain terms be argued to be limited to ad valorem tax and income tax (although corporate income taxes under ch. 220, F. S., are specifically excluded from the operation of this statute). The sales tax is neither an ad valorem tax nor an income tax. Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950). However, the state Supreme Court has held that similar language in another statute created a general exemption applicable to excise taxes, including the rentals tax imposed by ch. 212, F. S. Green v. Panama City Housing Authority, supra. See also AGO 070-131. Thus, although s. 154.233 has not been before the courts, it seems likely that it would be held to create an exemption from those taxes imposed by ch. 212.
In so saying, I am not unmindful of the provisions of s.212.08(12), F. S., which reads:
 No transactions shall be exempt from the tax imposed by this chapter except those expressly exempted herein. Except for s. 523.02, all special or general laws granting tax exemptions, to the extent they may be inconsistent or in conflict with this chapter . . . shall yield to and be superseded by the provisions of this subsection. . . .
In AGO 075-267 my predecessor stated that this provision was enacted by the 1970 Legislature as s. 3, ch. 70-206, Laws of Florida, in response to a judicial mandate to clarify the extent to which exemptions found outside ch. 212, F. S., were applicable to that chapter. In AGO 075-267, my predecessor opined specifically that the subsection quoted above superseded an exemption statute (s. 163.395(2), F. S. 1969) similar in its wording to s. 154.233, F. S., which had been adopted in an earlier year.
However, the same conclusion cannot be reached in this case. The language found in s. 212.08(12), F. S., was enacted in 1970. Section 154.233, F. S., was enacted in 1974 and is therefore the later expression of legislative will. Although the 1970 Legislature obviously intended that no exemptions found outside of ch. 212, F. S. (except that found in s. 423.02, F. S.), should apply to that chapter, it is well settled that in matters of tax exemptions one legislature cannot bind its successors. Daytona Beach Racing, etc. v. Volusia City., 372 So.2d 419, 420 (Fla. 1979), affirming 355 So.2d 175 (1 D.C.A. Fla., 1978), and Straughn v. Camp, 293 So.2d 689 (Fla. 1974). Thus, to the extent of inconsistency between these statutes, s. 154.233 prevails. Askew v. Schuster, 331 So.2d 297, 300 (Fla. 1976), and State v. Board of Public Instruction, 113 So.2d 368, 370 (Fla. 1959).
Your second question is based on the fact that the context of s. 154.233, F. S., refers to `hospital institution(s)' but not specifically to nursing homes in one clause thereof, which clearly relates to health facilities and their performance of essential public functions, even though both are classified as `health facilities' under s. 154.205(8), F. S. See also s. 154.205(10), which defines an authorized `project' to include nursing homes, as well as hospitals and other facilities required or useful for health care purposes or the operation of a health facility; and s.154.209, F. S. The term `hospital institution' is nowhere defined in part III of ch. 154, and that part in no way contextually evidences any legislative intent to limit the exemption to hospitals per se or to exclude nursing homes from `health facility.' In my opinion this makes no difference in the availability of the exemption. The entity which is exercising the taxable privilege under s. 212.031(1), F. S., is the lessor, which in this case is the health facilities authority. Since it is declared to be exempt from taxes upon or in respect of a project or property acquired by it under part III of ch. 154 or upon the income therefrom under s. 154.233, the exemption applies regardless of whether the lessee is specifically declared to be exempt or not. Green v. Panama City Housing Authority, supra. When the public health authority leases property owned by the health facility (see s. 154.209(4), (5), (7), (12), and (13), F. S.), and then subleases the property back to the health facility (see s.154.209(12) and (13)), it is my opinion that the primary lease from the health facility to the authority is also not taxable. When the health facility is a nonprofit hospital, it is also covered by the exemption provided in s. 154.233, F. S., so that the analysis above would apply to exempt leases from it. Nonprofit nursing homes are not in specific terms exempted by s. 154.233. However, even primary leases from them to an authority would not be subject to taxation. The provisions in ch. 212, F. S., seeking to avoid pyramiding of taxes and excluding sales for resale from the operation thereof generally result in a lease of premises to be further sublet in their entirety not being subject to tax. See
s. 212.031(2)(b) and s. 12A-1.70(4) and (8), Florida Administrative Code.
Prepared by: E. Wilson Crump II, Assistant Attorney General