*Decision will be entered under Rule 50.*

WILLIAM F. ARMENTROUT AND JOYCE S. ARMENTROUT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

*Docket No. 4168–62.  Filed October 9, 1964.*

William F. Armentrout, pro se.
*Eugene B. Smith,* for the respondent.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1960 in the amount of $183.78.

Four adjustments to income were made by the respondent but the only error assigned is whether the respondent erred in disallowing $480.60 of the $678.17 of Florida sales tax claimed by petitioners as a deduction in their joint return for 1960.

#### FINDINGS OF FACT

The stipulated facts are so found and are incorporated herein by this reference.

Petitioners are husband and wife with principal residence at Tallahassee, Fla. Hereinafter the husband will sometimes be referred to as petitioner.

Petitioners filed their 1960 Federal income tax return with the district director of internal revenue at Jacksonville, Fla.

During the year 1960 petitioner was engaged in the private practice of engineering. Petitioners owned a piece of real property upon which they desired to build a personal residence which was to be designed and planned architecturally by the petitioner.

At some time prior to construction, petitioner contacted D. L. Cooksey, a building contractor principally and normally engaged in the construction of larger commercial buildings. Cooksey was president of Bear Construction Co. of Tallahassee. Petitioner rented office space from the Bear Construction Co. and was a personal friend of one of the company's superintendents. Petitioner contacted Cooksey relative to the use of the facilities and services of Bear Construction Co. and its employees in the construction of petitioners' personal residence.

Petitioner and the Bear Construction Co., acting through Cooksey, orally agreed that the Bear Construction Co. would purchase the materials needed to build petitioners' residence and furnish the necessary labor; that petitioner would pay for the cost of materials and labor used in or on the construction activity; and that petitioner would pay to the construction company an amount equal to 8 percent of the total cost of the materials and labor, as overhead and profit. One reason this agreement was entered into was to obtain the benefit of price discounts that were available to the contractor but were not available to petitioner as an individual. Also, the skilled personnel of the Bear Construction Co. were already covered by workmen's compensation insurance.

The method of arriving at the total contract price to be paid to the construction company by the petitioners under the terms of the oral agreement (i.e., the total cost of the labor and materials purchased by the construction company, plus a percentage thereof as overhead and profit) is commonly known in construction and contractual terminology as the cost-plus contract method, and was designated as such by the petitioners in their 1960 joint Federal income tax return.

The final total amount paid to the construction company by the petitioners on the construction of their personal residence included:

Cost of labor and materials_____ $28, 355. 20
Sales tax on materials_____ 480. 60

Total cost of labor and materials_____ $28, 835. 80
Overhead and profit to Bear Construction Co.: 8%×$28,835.80____ 2, 306. 86

Total paid by petitioners_____ 31, 142. 66

The total Florida sales taxes paid on the materials purchased by and in the name of Bear Construction for use in the petitioners' personal residence amounted to $480.60.

Petitioners, in their joint Federal income tax return for the taxable year 1960, claimed a deduction representing Florida sales taxes paid in the total amount of $678.17, accompanying the claimed deduction with the following explanation:

Schedule for Sales Tax:

| | |
|---|---:|
| Sales tax on materials & Equipment for new Residence at 1314 Leewood Drive built under cost plus contartx [sic] by Bear Construction Co., Inc., Tallahassee, Fla. (Documented amounts) | $562.17 |
| Normal sales tax on Income for 1960 | 116.00 |
| Total | 678.17 |

The $562.17 claimed as a deduction for materials used in the construction of the new residence by petitioners included the sales tax imposed on other "equipment" for the residence purchased in the name of Bear Construction Co. which cost $2,800.54, which included the State sales tax amounting to $81.57. This amount of $81.57 was paid directly to the sellers by the petitioners and the deduction was not disallowed by the respondent.

The remainder of the $562.17, or $480.60, was disallowed by the respondent and in a statement attached to the deficiency notice he explained his disallowance thus:

(b) The deduction of $678.17 for State sales tax is disallowed to the extent of $480.60 because you have not established that you are entitled to deduct the amount in excess of $197.57. Therefore, taxable income is increased in the amount of $480.60.

### ULTIMATE FINDINGS

Under the Florida sales and use tax law (ch. 212, Fla. Stat. Ann.) and the rules and regulations thereto promulgated by the comptroller of the State of Florida on December 1, 1959, and effective during the taxable year 1960, Bear Construction Co. was the "ultimate consumer" of the materials purchased by it for use in the construction of petitioners' residence and was the person upon whom the sales taxes were "imposed," and the person upon whom the obligation to make payment thereof was placed.

### OPINION

The parties have stipulated that "Such disallowance [$480.60] was made by the respondent on the theory that such sales tax expense was incurred by Bear Construction and not the petitioners within the

meaning of section 164(c) of the Internal Revenue Code of 1954." The material provisions of section 164 are in the margin.[1]

In determining whether a State tax is *imposed* against taxpayers so as to authorize them to deduct the amount of the tax in computing their income tax liability, Federal courts must look to the law of the State imposing the liability, and its interpretation by the courts of that State. *Wisconsin Gas & Electric Co.* v. *United States*, 322 U.S. 526 (1944). In *Magruder* v. *Supplee*, 316 U.S. 394 (1942), the Supreme Court, among other things, said:

> The guiding principle for determining whether a payment satisfying a tax liability is a "tax paid" within the meaning of Section 23(c) [sec. 164 of the 1954 Code] is furnished by the applicable Treasury regulation, which states that "In general taxes are deductible only by the person upon whom they are imposed." * * * [Citing cases.] Resort must be had here to the laws of [the State of] Maryland and of the City of Baltimore to determine upon whom the state and city * * * taxes were imposed.

The Supreme Court of the State of Florida, in *Spencer* v. *Mero*, 52 So. 2d 679, made it clear that the Florida sales tax was a tax levied on the vendee rather than the vendor (which is just the other way in Tennessee, see *Herbert Shainberg*, 33 T.C. 241, 249). It reaffirmed the doctrine of the *Spencer* v. *Mero* case in *Davis* v. *Ponte Vedra Club*, 78 So. 2d 858, 859; and in *Scripto, Inc.* v. *Carson*, 105 So. 2d 775, affd. 362 U.S. 207 (1960), it made the statement, perhaps by way of obiter dictum but well supported by the above two cases, that "A sales tax is a form of excise tax *imposed* on an *ultimate consumer* for the exercise of the privilege of purchasing property." (Emphasis supplied.)

The sales taxes which are involved in the instant case are imposed by the State of Florida under the provisions of chapter 212, Fla. Stat. Ann., the pertinent sections of which are in the margin.[2]

---

[1] SEC. 164. TAXES.

(a) GENERAL RULE.—Except as otherwise provided in this section, there shall be allowed as a deduction taxes paid or accrued within the taxable year.

\* \* \* \* \* \*

(c) CERTAIN RETAIL SALES TAXES AND GASOLINE TAXES.—

(1) GENERAL RULE.—In the case of any State or local sales tax, if the amount of the tax is separately stated, then, to the extent that the amount so stated is paid by the *consumer* (otherwise than in connection with the consumer's trade or business) to his seller, such amount shall be allowed as a deduction to the *consumer* as if it constituted a tax *imposed* on, and paid by, such *consumer*. [Emphasis supplied.]

[2] 212.05  Sales, storage, use tax

It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state * * *. For the exercise of said privilege a tax is levied as follows:

(1) At the rate of three per cent of the sales price of each item or article of tangible personal property when sold at retail in this state; * * *

\* \* \* \* \* \*

(5) The said tax shall be collected from the dealer * * *

212.06  Same; collectible from dealers; dealers defined; dealers to collect from purchasers; legislative intent as to scope of tax

The comptroller of the State of Florida, pursuant to the duty and authority imposed upon him by section 212.17, Fla. Stat. Ann., promulgated "Rules and Regulations, Florida Sales and Use Tax Law, Chapter 212, Florida Statutes" the material provisions of which are in the margin.[3]

We think the Bear Construction Co. specifically used the method described in rule 51(2)(b) of the Florida Rules and Regulations and rule 51(2) thereof provides that when the contractor uses such method (i.e., cost-plus basis) "he becomes the ultimate consumer." We think it follows that under section 212.07(2) of the Florida Statutes Annotated, and *Spencer* v. *Mero*, *supra*, the taxes here in question were therefore "imposed" on the Bear Construction Co. and were deductible by that company under section 164(c)(1), *supra*, rather than by petitioners.

Petitioners contend that the understanding petitioner had with Cooksey was that of principal and agent rather than that of an independent contractor, and in their brief they argue that from the record no other conclusion can be drawn "but that an agency relationship was created by Petitioners and Mr. Cooksey and that Petitioners were the ultimate consumers of the materials bought through the agent, Bear Construction Company."

(1) The aforesaid tax at the rate of three per cent of the retail sales price * * * shall be collectible from all dealers as herein defined on the sale at retail * * * of tangible personal property.

212.07. Same; tax added to purchase price; dealer not to absorb; penalties; general exemptions

(1) The privilege tax herein levied measured by retail sales shall be collected by the dealers from the purchaser or consumer.

(2) Dealers shall, as far as practicable, add the amounts of the tax imposed under this chapter to the sale price or charge, which shall be a debt from the purchaser or consumer to the dealer, until paid, and shall be recoverable at law in the same manner as other debts. * * *

212.17 * * *

(4) The comptroller shall have the power to make, prescribe and publish reasonable rules and regulations not inconsistent with this chapter * * * for the enforcement of the provisions of this chapter and the collection of revenue hereunder, and such rules and regulations shall when enforced be deemed to be reasonable and just.

[3] Rule 51

Sales to or By Contractors Who Repair, Alter, Improve and Construct Real Property

(1) Where contractors or sub-contractors perform contracts in connection with the * * * construction of real property * * * it is necessary to determine the method adopted by such contractors, or sub-contractors in arriving at the total contract price charged to their customers in the fulfillment of their contracts, for the purpose of ascertaining whether the receipts from sales made to or by them are taxable.

(2) Such contractors * * * may use one or more of the following methods in arriving at the total contract price:

* * * * * * *

(b) Those contracts in which the contractor or sub-contractor agrees to furnish the materials and supplies and necessary services on a cost-plus basis;

* * * * * * *

When a contractor or sub-contractor uses materials and supplies in fulfilling * * * a cost-plus contract * * * he becomes the ultimate consumer thereof. The person or dealer who sells such materials and supplies to such contractor or sub-contractor is making sales at retail to him and is required to collect the tax from him based upon the receipt from such sales.

Paragraph 4 of the stipulation of facts is as follows:

Petitioner and the construction company agreed that the petitioner would pay for the cost of materials and labor used in or on the construction activity and that the petitioner would pay to the construction company an amount equal to eight per cent (8%) of the total cost of the materials and labor, as "Overhead and profit."

We think under this stipulation the Bear Construction Co. must be regarded as a "contractor" as that term is used in rule 51, *supra*. Furthermore, it should be noted that not only did the petitioners designate the method employed at arriving at the total contract price under their agreement with the construction company as the cost-plus contract method in their income tax return but the construction company also considered the sales taxes ($480.60) paid on the materials purchased for use in the construction of petitioners' residence as a part of the cost of those materials it purchased for the purposes of calculating its 8-percent addition for overhead and profit.

We hold that petitioners are not entitled to an additional deduction for Florida sales tax of $480.60, in excess of the amount allowed by the respondent for the taxable year 1960 under section 164(c)(1) of the Internal Revenue Code of 1954.

*Decision will be entered for the respondent.*